A proper value engineering change proposal may consist, contrary to the holding of the board below, of no more than a modification of contract terms, and it is not required that there be an alteration of the contract work as the Armed Services Board so held in dismissing this case on motion for summary judgment. The schedule of the contract here in issue required that the contract work, two different air conditioners, comply with two different naval sea system command drawings, but this said that that meant that change was to be applied for this contract only, and the change was in this contract only the entire interior of the air conditioner was to receive a resin coating. The drawings themselves at that time required an epoxy powder coating. The mandatory value engineering clause of the contract, the contract language which the board ignored, says only that a valid value engineering change proposal requires nothing more than a change to this, the instant contract to implement. And the value engineering change proposal that the contractors submitted under this contract specified that the drawings would be changed. The drawings in fact were ultimately changed in October of 2003, the contract had been awarded in April. So, that's really the crux of the case right there. But Mr. Phillips, if in fact the contract specified for the aerosite to be used in the contract, what difference does it make whether the drawings itself showed it or not? And it was a requirement for the use of the aerosite instead of the epoxy. The contract that was awarded applied for this contract only. The value engineering clause of the contract, a mandatory requirement imposed by the contract on the contractor, required the contractor to identify possible savings. That clause specifies those savings can be applied to the instant contract, this is the 0062 contract, to collateral cost that are associated with that change, and to future contract savings. The value engineering change proposal said let us make these changes to the drawings permanent, and let us pay us for this change to the contract over future contracts, and pay us our savings of collateral cost, because what was happening was because these air conditioners were lasting only six to eight months, when the vessels were deployed, the ships on which they were deployed were taking along extra air conditioners. This change increased the service life of those air conditioners from six to eight months to, in the case of the prototype, more than seven years, reducing the number of spares you had to take with you on a deployment. And that's collateral cost savings contemplated by the clause in the contract. That's the change, lowercase c, that we're talking about. Well, let me see if I understand it correctly. The contract called for the air site to be used, but you're saying basically that even though it was required under the contract to be used, that could be considered a change under the contract because the drawings did not reflect the particular change? The drawings under this contract did not reflect the particular change. That change in the contract is shown only in the contract schedule. The drawings themselves were never modified. The contract was awarded in April. The drawings were not modified until the following October. But you still had to follow the terms and conditions of the contract itself. And we did. And the air site was used. Yes. Under the terms and conditions of the contract. That's correct. So where's the cost savings allowance then come into play at that point, if in fact it was required under the contract? The cost savings come in respect to the application of the change to the drawings for future contracts and the savings of collateral cost. Mr. Rosenthal, to pick up, does the contract, does the regulation of the contract provision though require that there be, that in order for these follow-on savings to be factored in, is it not necessary that there be a change to the instant contract as the trigger for down the road entitlement to savings? Yes, there had to be a lowercase c change to the instant contract. Remove the language that says the Harrah site applies for this contract only. That's precisely the VECB. But this contract though always had in place, as I think Judge Garza pointed out, the Harrah site requirement. There was never a change to it. In the contract schedule, but not in the drawings. The contract is the contract schedule and the drawings. It's an integrated instrument. Well, it isn't too unusual, at least in my experience with these contracts, for drawings and the specifications of the contract to be at variance. I mean, it just happens quite complex instruments and that does happen that. Now, my understanding was that in this case, the drawings had just not been updated to reflect the requirements of the contract. Is that a fair statement? I mean, let me put the, well, go ahead. You can answer that and then I'll put it in a different way to make sure I understand what this. The Navy requested the defense installation in Philadelphia to make the change in 1999. Okay. The defense installation didn't make the change. When they issued the solicitation for this contract in April 2003, the contractor called the Navy and said something's wrong here. Philadelphia is buying the wrong thing. Please do something about it. The Navy called Philadelphia and Philadelphia said, all of a sudden, we will take resin-coated air conditioners for this contract only. That's what's in the contract. So your contention is that this, if you had provided resin-coated air conditioners for this, not parasite, but just the old style coating. It was a powder coating. Right, the powder coating. I, anyway, old style versus new style, just to make sure I don't get the specific substance wrong. But if you had provided the old style, you would have been in full compliance with the contract? Until the solicitation was for the old style air conditioners. Right. The contractor provided a quote on the old style air conditioners. But the contractor alerted the Navy to the problem. The Navy told Philadelphia, please make a change. And Philadelphia said, we will entertain the new style air conditioners. So we gave you a quote on the new style air conditioners. The contract was awarded for the new style. Right, so you would not have been in compliance if you had used, if you had produced the old style air conditioners, right? We would not have been in compliance with the contract schedule. Well, or the contract, period. If you had litigated that question and come to this court or the board with the argument that- Wouldn't be here because we wouldn't have litigated it. It was obvious. But you would not have complied, right, with the contract? That would not comply. That's correct. So the contract did require the new style. And the only problem- This contract only. OK, but set aside the this contract only for a moment. I'm trying to get at the question of whether there's any magic to the fact that the drawings had to be corrected in order to comply with the requirements of the contract. I think we've established that the contract did require, as a legal matter, the new style air conditioning, right? Yes, absolutely. So the drawings were at variance with what the contract actually required. Right. So the only thing that was done with respect to the drawings is that they corrected an error in the drawings. Is that a fair statement? And that's a value engineering change proposal that was, in fact, made. Yes. And that's perfectly permissible under the clause. So your view is that if- Let's take a really silly example. Suppose that we say we want the gun turrets on the ship to be made out of metal. And that's in the contract. Doggone it if the drawing doesn't show that they're made out of cardboard. And you come in and you say, you know, you really ought to change those drawings to say make them out of metal. That you get a value engineering change proposal for that? Yes, because I put myself in the context of this contract. Let's look at what the records show and what the need is. I want to make sure that I've got your yes on this. Yes. So you're saying that if the drawings, completely at variance with what everybody agrees the contract actually requires, the drawings have cardboard in there, that you get the value engineering change proposal benefits? Yes, that's exactly what the regulation says. Okay. Now- That doesn't make sense. I mean, the contract clearly says that metal is required for the gun turrets. Okay. And our law makes it clear that if the contract is clear in that regard, some variance in the drawing isn't going to make a difference. So you would be bound to provide the metal gun turrets, not cardboard. Under that contract, we're talking about successor contracts. Let me, let's look at the economics of this as contemplated by the class. All right. These units, the way they were being made, as directed by the Navy, were lasting six to eight months. The contractor was enjoying the benefits of supplying replacement units, and the units were going to pieces within six to eight months. The Navy, working with the contractor, came up with a solution to this problem to coat the inside of the air conditioners and the interior metal parts, if you will, with resin. That resulted in a change, in an extension of the service life of these units from six to eight months to more than seven years. In essence, the contractor, by requesting that this change be made permanent, diminished its opportunities to supply replacement air conditioners. And that's what the clause contemplates. This was a mandatory clause for this contract. This is what we proposed, and it is, in fact, what the Navy accepted in October of 2003 when they changed the drawings. All the air conditioning units that have been delivered for this application since have been the new style, if you will, air conditioners. Okay, we're into your rebuttal time. Shall we save the rest of your rebuttal? Thank you. I'll be pleased to close. The board's decision, which held that the VECP was invalid, should be affirmed because the VECP at issue here proposed a concept that was already incorporated in the contract. By definition, a VECP must propose a change to be implemented against a contract. And here, the VECP proposed that the Navy's air conditioners be coated with Herosite. More specifically, it proposed revising the source control drawings to add the Herosite requirement. So let me ask you, assume what happened here, the solicitation issued originally, and it didn't have the requirement for Herosite. And then the contractor brought to the attention of the procuring authority the fact that it didn't have the requirement for Herosite, and it only had the epoxy, and it said you ought to change this. And it was changed. So that then we had a solicitation that reflected the Herosite, correct? That's correct. The solicitation ultimately reflected the Herosite, as did the contract as a whole. Now, assume for the moment the contractor hadn't said anything. The contract had just gone ahead with the epoxy, and the contractor had signed that contract. The contractor at that point would have only been bound to provide the epoxy coating, correct? Correct. However, if at that point the contractor had come in after the contract had been signed and said, wait a minute, you have a problem here. These things are going to degrade very rapidly. You ought to have Herosite. And he had proposed a change at that point, and the contract had then been changed. Would that have qualified as a value engineering change proposal? Yes, your honor. If the contractor, as your hypothetical posited, had submitted a valid VECP meeting after the contract was awarded and the contract provided for epoxy powder, and then the contractor says, wait a minute, as we've talked about for years, you need to instead use Herosite, which we proposed. The problem here from the standpoint of the contractor in this case is that the Herosite was put in to the solicitation, and then there was a contract as a result of the solicitation, rather than a contract being changed. Yes, your honor. The problem for Wedge is that the ECP proposed a concept, the Herosite coating requirement that's already in the contract. Go ahead. The problem is that, or actually just to point out rather for the court, that the Navy initially in 1999, in September of 1999, said we want these source control drawings to be revised, to be redlined, to include the Herosite. And so the drawings, there were redlined drawings that incorporate the Herosite requirement. But for some reason, it's not clear from the record, from 1999 until the instant contract in April 2003, the procurement activity for the Navy never incorporated that until this year. And so the problem for Wedge is that it had the opportunity during that time to say, well, remember, let's incorporate this Herosite requirement, submit a VCP, and then it was shared in the instant concurrent and future savings. But it waited, in this case, until after the contract was awarded that it contained the Herosite requirement. And that's why it failed to submit a valid VCP. Because again, by definition, a VCP must propose a change to be implemented in the instant contract. Now, Wedge is a company that obviously has experience with government contracting. It responsibly should be on Wedge to understand how a VCP clause works and it's in the contract and to take advantage of it when it clearly had the opportunity to do so. It does seem rather peculiar. And I think Judge Schall's questions make this pretty clear that a contractor who is behaving as a sort of ordinary good citizen and comes forward just before the contract is let gets no benefit from the exact same suggestion that if the contractor should wait and keep the suggestion to himself until after the contract is awarded and then springs the suggestion on the Navy, then the contractor gets a very substantial benefit. That seems, I mean, that may be the way the system works and maybe people should be aware of the way the system works. It seems a little bit peculiar though. I understand your honor's intuition here that that seems peculiar. But at the same time, I believe that it's the responsibility of the contractor to understand how these clauses work. You must propose a change to the instant contract. As I said, in terms of the equities of the matter, Wedge had several years. There are many contracts from 1999 to 2003 that contain the epoxy powder during any one of those contracts that could have submitted a VACP, given that suggestion back from 1996, that hair site coating will provide for a better working air conditioning unit. So... But was that developed by the Navy or was that developed by the contractor? Well, the Navy in 1996 went to Wedge and said that our air conditioners are not working or not lasting as long as they should, given the coercive effects of the environment in which these vessels are working. And Wedge's response was, well, you should coat it with hair site and they provided a sample unit to be coated with hair site. And after they saw how that worked in September of 99, the Navy said, we want our future procurements to include these red line changes to the source control drawings to acquire hair site. So should have the contractor imposed a request for a value-added at that point? Would that change? It perhaps could have, but I think that what... Another option that Wedge could have, you know, utilized in regard to this particular contract is simply say, well, I mean, they agreed to the hair site requirement, right? I mean, this is a two-party deal. They agreed to it and they could have instead said, well, we'll have epoxy powder in the original contract and we'll agree to submit a BCP in which you will accept a modification of that contract to include hair site. And because in that instance, it's only fair, we'll get a chance to share in the savings because we did come up with this concept in 1997. And so we're not gonna agree to include it now because we're gonna be cut off from savings if we do that. What happens if, to take this very scenario, and it does sound as if Wedge was really the one that came up with the solution. The Navy came up with the problem and then Wedge came up with the solution. I'd say that's a pretty substantial disparity in contribution in favor of Wedge. But if, let's assume that this is a continuing series of contracts and the Navy comes to Wedge as it did and says, we have this problem. Is, are you saying that the right thing tactically for Wedge to do is to wait until it has a contract pending and then come to the Navy and say, okay, now that we've got a contract for the old system, here's our proposal. And if the Navy accepts that proposal in the context of that contract, then they get the benefit in all subsequent contracts of the VECP, right? Well, but if they answer the Navy before they have an actual contract pending and they say, we've got a great idea, which is parasite. And they, it's, this is three days before a contract is actually awarded and the Navy then changes the solicitation, then they get nothing. Well, I think that the answer that I propose to Judge Gargazza of simply negotiating for, yes, well, we recognize that based on the language of the VECP clause, which is a standard clause in FAR and incorporated in this contract, that the plain language is going to basically bar us from getting any savings if it's included in this contract. When it comes subsequently, it's not a change to the contract. Okay, now let me ask the follow-up. Well, I'm sorry, were you finished? Oh, no, I said, so one solution is simply for them to negotiate and say, well, let's negotiate to have a proxy in the original and then we'll agree that you'll accept our modification because that's what's required and that way they get saved. Now, again, then the follow-up question would be, suppose that this sequence of events occurs and the contracting officer of the Navy, trying to save the taxpayers some dollars, decides that this is the way we'll do it. These are all relatively small contracts and they come in sequence. So what we're going to do is, this Harriside idea is a great idea. We've got a contract pending. We won't ask for a change in this contract because then we'd be on the hook for a VECP forever each time we have these various changes. Instead, we'll wait until this contract is finished and then we'll put the Harriside requirement in the solicitation in the next contract. Would there be no VECP entitlement under those circumstances? You follow my hypothetical? Perhaps. I mean, in other words, if the Harriside- Perhaps not or- Well, I'm sorry. Let me recite it to make sure I understand. So in your hypothetical, the contract number one contains the epoxy- Epoxy, right. And then the Navy says, let's make sure that the next contract, the follow-on contract, so to speak- Yeah, the Navy- Harriside. The contractor goes to the Navy and says, Harriside is a great idea. Let's make the change, having in mind to get the VECP. But the Navy, being very clever, says, no, we won't do it in this contract. We'll wait for the next contract, in which case we'll put it in the solicitation and there'll be no VECP. Is that the way it works? Well, exactly. The reason I was restating, so I want to make sure I understand, but it seems in that hypothetical, Wedge still has an opportunity. Once you have the contract that's executed and has the epoxy powder, as soon as that's executed, they can submit to the contracting officer a VECP for Harriside. And as I've mentioned previously, I believe that scenario is a valid VECP. Okay, but the question is, if there's no change to that contract, let's assume the Navy CO, the contracting officer says, no, I'm not going to change this contract. We'll make a change later. We'll simply put a new solicitation for Harriside the next time we have a contract. Does that disqualify the contractor from getting the VECP? Well, if the first contract has the epoxy powder requirement and it's not modified, so it's executed, and then, in my opinion, Wedge, it seems clear to me, that Wedge, at that point, submits a VECP for Harriside. And in your hypothetical, you're saying that next contract still does not contain... No, the next contract does have Harriside. It does. See, what the Navy... Right, so... The question is, can the Navy avoid VECP, in effect, by saying, this contract, we're not going to make a change, but what we'll do is, we'll simply put the modification in the form of the solicitation on the next contract. No, the answer to your question is, that's not correct. I'll emphasize that there is... It's absolutely true and correct that if Wedge, after you have contract number one, the epoxy powder requirement, and then they, at that time, submit a value engineering change proposal that contains Harriside, there's no question that that's a valid VECP. Now, if your hypothetical is, well, what if the contracting officer rejects it for whatever reason? It can't reject it on the ground. It's not a change to the contract, but it just comes up with some arbitrary reason. No, it just doesn't decide not to change the contract. It decides not to change it, but then in some subsequent contract, the exact same proposal is in there, either through a modification or because it's just originally in the contract. In the solicitation. Well, in the solicitation, and then it becomes part of the contract. But either way, after the VECP is submitted, it's in the contract, then I think they have a strong argument under the precedent that that's a constructive acceptance of their VECP. That's, again, why I'm emphasizing the timing of their submitting a VECP after that original contract has epoxy powder, which they didn't do in this case. You're saying, Mr. Albee, even though they, in the first contract, contract number one, they came forward and said, look, this should be changed to have heresyte instead of epoxy. And the contracting officer said, your proposal is in proper form, but I choose not to make the change in this contract. But then one year later, the solicitation appears for some more air conditioners, and it is in there. You're saying that at that point, the contractor would have a good claim for savings to the Navy based upon the proposal that was submitted for contract one but was not accepted. Yes, Your Honor. Under this court's precedence and case law, I think that would present a valid case for constructive acceptance. Whether or not it's in this contract, that is, you know, kind of follow-on contracts regarding these parties, or if it's some other party with the Navy and they incorporated the heresyte requirement and based on the same proposal that was in the BCP, then under, for instance, the Bianchi case for the Shred Circuit ruled on in the early 90s, that's sufficient to meet the constructive acceptance standard. Again, it has to be, Judge Bryce. Go ahead. OK, I mean, that's sufficient to meet constructive acceptance. Again, it goes to the wedges being proactive in understanding how VCPs work and actually presenting a valid VCP when it has the opportunity to do so. So if you assume with me for the moment that a wedge was really the moving force behind coming up with the heresyte proposal way back in the 90s, whenever it was, then is that proposal that was made back in the 90s, would that qualify as a VECP which was constructively accepted at the beginning in the solicitation of this contract? And if not, why not? Sure. The answer is no, Your Honor. And the reason is, as this court stated in Erickson Crane Company at 231 F. 2nd 280, in order to have a valid VECP, the contractor must follow the specific requirements that are set forth in that clause. For instance, it must detail what's the existing contract requirements at issue, how has it changed, what's the justification, what kind of cost savings we're going to realize. In other words, there's a set format. And the purpose of having the contractor follow those requirements is to give, as the court stated, and as this court stated in Erickson Crane Company, is to give the government proper notice, to give the government an opportunity to understand what the proposal at issue is, what's the justification for it, and to make an intelligent and informed decision. And so that didn't happen here. There's no question that WEDS had the opportunity for numerous years to submit a value engineering change proposal. It chose not to. Instead, it proposed a value engineering change proposal after the contract at issue already contained the changes that were in that proposal. Does it make any difference if, in fact, the Navy is the instigator of the change itself and developed it and paid for it? That was an issue that was a rationale for the contracting officer's final decision and to answer your question. The case law strongly suggests that it doesn't matter exactly who initially came up with it. It was a collaborative effort the result of which WEDS proposed the heresy requirement that the fact that the Navy had some involvement is not going to disqualify it. But again, in this instance, WEDS didn't submit a valid VECP or they didn't submit one based on a contract at that time.  Thank you, Mr. Armour. The, let's see, I think you have just about two minutes, Mr. Brooks. Thank you, Your Honor. The instruments by which these air conditions were procured from 1999 to 2003 were purchase orders, not contracts. There is a difference. A purchase order does not contain a value engineering clause. A contract does. And the value engineering clause contained in this contract imposed it as a mandatory duty on WEDS. What we have been talking about is the old, old, I hate to say old, old, I'm old, old, is the 1968 BF Goodrich case in the Court of Claims. That is a case where the Air Force invited the contractor before it even had a contract to make changes to a brake assembly, then turned down a value engineering change proposal for the brake assembly, imposed it as a change, it was a deductive change, and proposed to keep all of the contract savings. This court gave the contractor its value engineering share and gave that contractor 50% of the reduction back as a value engineering royalty, if you will. But the only value contract that occurred after the letter from the Navy from 1999, a letter that Philadelphia would ignore, is this contract 0062. It was followed by two subsequent contracts between WEDS and Philadelphia. Both those contracts contained a value engineering change proposal, and both of them were for the new style air conditioner. And this was all after the Navy had changed its drawings. Thank you. Thank you. Case is submitted. At this point, the court will take a...